# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

VICTOR SANCHEZ,

      Plaintiff,

vs.                                                   Civil No. 00-981 JP/WWD

LARRY G. MASSANARI, ACTING
COMMISSIONER OF SOCIAL SECURITY,[1]

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1. This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed January 2, 2001 **(Doc. 9)**.[2] The Commissioner denied Plaintiff's request for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. Plaintiff, currently age 34, alleges a disability beginning in September 1997 due to back problems and epilepsy. He worked in the past as a pipefitter.

    2. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied the request for benefits finding that the epilepsy was not severe at step two and that Mr. Sanchez had a residual functional capacity ("RFC") for medium level work. The

---

[1] President Bush designated Larry G. Massanari as Acting Commissioner of Social Security, effective March 29, 2001. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Larry G. Massanari should be substituted for Kenneth S. Apfel as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The motion package was actually filed with the Court on April 17, 2001, although the motion was served on January 2, 2001.

Appeals Council denied Mr. Sanchez's request for review of the ALJ's decision, thus rendering the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

4. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ did not properly develop or weigh the evidence; and (2) the ALJ failed to inquire fully.

5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. §423 (d)(1)(A)); 42 U.S.C. § 1382c(a)(3)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted). If a determination can be made at any step, evaluation under subsequent steps is not necessary. Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

6. At the first four levels of the evaluation, the claimant must show: (1) that he is not working; (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of

impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he is unable to perform work done in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

7. The Medical-Vocational Guidelines ("grids") are used at this step to determine whether disability exists. 20 C.F.R. Part 404, Subpt. P, App. 2. The grids reflect the existence of jobs in the national economy at various residual functional capacity ("RFC") levels by incorporating administrative notice of occupational publications and studies. 20 C.F.R. §§404.1566(d); 416.966(d). This aids the Commissioner in determining what specific job types in the national economy the claimant can perform. The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §2000(e)(2).

8. Mr. Sanchez lives with his wife and three children[3] in an apartment in Hatch, New Mexico, but at the time of the hearing his wife was expecting another child and was in a hospital in Las Cruces. The administrative hearing was also held in Las Cruces. Plaintiff told the ALJ that someone else was caring for the children while he was staying with his wife. He would like to move the family to Las Cruces because his wife would be in the hospital for several months, but he had no place to stay yet, and spent the days in his truck. Tr. at 124. The family receives AFDC, food stamps and a housing subsidy. Tr. at 128-29.

9. Plaintiff went to school in Mexico and has an eighth grade education. Tr. at 125. He last worked in 1997, which is the year listed as his disability onset date. At the hearing, Mr.

---

[3] According to the transcript, Plaintiff stated that he had "six kids" but gave 9, 8 and 4 as the children's ages, and stated that a total "five" of them lived in the apartment. Tr. at 123.

Sanchez stated that his back problems started in 1995, and according to Dr. Nillo, who performed a disability evaluation in March 1998, he sustained a lower back injury while working in El Paso in 1995. He told the ALJ that he worked as a fieldworker, six months as a plumber's helper, and in 1996 and 1997 he worked as a pipefitter for ten months before he was laid off.

    10.    Mr. Sanchez told the ALJ that his back and seizures prevent him from working. <u>Tr. at 126</u>. He stated that he's had epilepsy since he was 19 years old. Plaintiff uses Tegretol for his seizures, which he purchases over the counter in Mexico. <u>Tr. at 85, 95</u>. He said that he had not been to a doctor since 1996, but that he had received treatment and medication for his back – ibuprofen and a muscle relaxant, methocarbamol – from "Ben Archer Health Center" in Hatch before that time.

    11.    When asked by the ALJ whether he told Dr. Nillo that he had not had a seizure in ten years, Plaintiff replied "Maybe I told him." <u>Tr. at 128</u>. However, according to Dr. Nillo's report, what Plaintiff said was that he had not sought nor received medical treatment for ten years for his epilepsy. <u>Tr. at 85</u>.

    12.    Plaintiff told the ALJ that his back and seizures prevent him from working. <u>Tr. at 126</u>. However, Mr. Sanchez felt that the seizures could be controlled with an increased dosage of the Tegretol, but that medication could not control his back pain. He was unable to lift heavy items and his back hurt when he bent down. <u>Tr. at 130</u>.

    13.    In September 1998, Plaintiff saw Dr. Enrique Martinez, Medical Director at Ben Archer Health Center for a "disability evaluation." <u>Tr. at 109</u>. Plaintiff reported having epileptic seizures about twice a month. Pending receipt of Plaintiff's past medical records and a more appropriate review of Plaintiff's disability status, Dr. Martinez recommended that Mr. Sanchez

"refrain[ ] from employment." Id. There is no documentation in the record of subsequent visits to Dr. Martinez or whether Plaintiff's medical records were ever received at Ben Archer by Dr. Martinez.

**First Alleged Error**

14. Plaintiff alleges that the ALJ did not properly develop or weigh the evidence. Plaintiff specifically challenges the ALJ's use of Dr. Nillo, who is a psychiatrist and not a neurologist, to assess Plaintiff's seizure impairment.

15. The ALJ determined at step two in the analysis that Plaintiff's impairment was not severe. Tr. at 14; see Bowen v. Yuckert, 482 U.S. 137, 152 (1987) (if an impairment is so slight that ability to perform gainful activity is not seriously affected, analysis may conclude at step two). The ALJ then relied on the grids (Part 404, Subpt. P, App. 2, 203.26 and 203.27) in determining that although Mr. Sanchez could not perform work as a pipefitter, neither his musculoskeletal impairments nor his epilepsy precluded work on a medium level.

16. Plaintiff contends that a neurologist would have been more qualified to offer the ALJ objective medical evidence from which the ALJ could have made a proper determination of facts and issues on Plaintiff's seizure disorder. The ALJ has broad latitude in determining whether to order a consultative examination. See Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 778 (10th Cir.1990). Where the record is sufficient to support the ALJ's findings, a consultative expert ("CE") is not required.

17. Given the sketchy medical picture of his epilepsy, this case should be remanded so that a neurologic consultant can examine Mr. Sanchez to provide a report regarding the seizure impairment. A neurologist is not always required to assess an alleged neurological impairment,

but one would have been more appropriate given the specific facts in this case.

19. Plaintiff testified that he felt his seizures prevented him from working, and he told Dr. Martinez that he had them twice a month. Testimony alone cannot establish a nonexertional impairment. Hamilton v. Sec'y of Health & Hum. Servs. 961 F.2d 1495, 1497-98 (10th Cir. 1992). However, the ALJ should have developed the record further in this case, which would have included obtaining a neurological consult.

19. Plaintiff appeared *pro se* and with no witnesses to testify on his behalf. The basic duty of the ALJ to ensure that an adequate record is developed during the disability hearing is heightened when the claimant is unrepresented. Henrie v. United States Dep't of Health & Hum. Serv., 13 F.3d 359, 360 (10th Cir. 1993). While the hearing notice makes it clear that a claimant may bring along witnesses as well as legal representation,[4] the effect of the express language is limited when the claimant doesn't read well, as is the case here. Tr. at 120.

20. The ALJ acknowledged that Plaintiff was evaluated for a seizure disorder "many years ago" in Texas, was tested in 1986 and 1987, found to have had abnormal EEG's, and was prescribed Tegretol. There are no subsequent records concerning this impairment until Plaintiff saw Dr. Nillo in March of 1998. Tr. at 83. The ALJ's determination that Plaintiff's seizures were not severe was based in part on the fact that no medical documentation existed to support Plaintiff's allegations of seizures which occurred twice monthly.

21. Dr. Nillo reported that Mr. Sanchez could give no estimate of the number of epileptic spells he has had, but he noted that Plaintiff complained of somnolence and fatigue lasting for an

---

[4] Plaintiff told the ALJ that he had sought legal representation, but was told by one lawyer that he should wait until his case is denied before seeking representation. Tr. at 120.

hour after regaining consciousness from these spells.  Tr. at 83.  The medical report does not discount the accuracy of Plaintiff's statements, but rather simply indicated that Plaintiff could not give an estimate of the number of seizures.

      22.  Plaintiff does not drive, although he has a valid New Mexico license.  A friend drove him to the hearing.  Tr. at 124.  Mr. Sanchez stated that he has been staying in the truck while his wife is in the hospital because he cannot drive, and that he needs to be accompanied by a family member or friend when out walking in case he "gets sick."

      23.  Mr. Sanchez presented at a Las Cruces emergency room in September 1998 complaining of a seizure the night before.  Tr. at 107-08.  The examining physician determined that Plaintiff's Tegretol level was subtherapeutic.  While the scarcity of medical documentation regarding seizure episodes or treatment for epilepsy may be relevant to a credibility determination, it may also be relevant to the fact that Plaintiff has been self-medicating with Tegretol which he can purchase in Mexico over the counter.

      24.  At the hearing, Plaintiff remarked that his seizures might be controlled with an increase in medication.  Tr. at 130 ("it's like the seizures maybe then can control them, you know, with medicine").  The Commissioner is apparently willing to take Mr. Sanchez at his word in this regard (beyond his word, actually, since Plaintiff's statement appears to be merely surmising that an increased dosage would control the seizures), but at the same time is unwilling to accept Plaintiff's testimony that he has seizures twice a month.

      25.  Epilepsy that is truly controlled epilepsy would not preclude work.  See Pacheco v. Sullivan, 931 F.2d 695, 698 (10th Cir. 1991) (an impairment that can reasonably be remedied or controlled by treatment cannot support a finding of disability).  However, in this case it is not

clear whether and to what extent Plaintiff's seizures are "controlled" with regard to other activities which may have been curtailed in order to abate symptoms.  See, e.g., Claassen v. Heckler, 600 F.Supp. 1507, 1511 (D.Kan. 1985) (control of symptoms does not mean the claimant can work, where claimant has achieved this status partly by severely restricting his activities).

26.   The residual functional capacity assessment which was completed, Tr. at 91-94, is not specific to the issue of Plaintiff's nonexertional seizure impairment.   Enough questions are raised here by Plaintiff's pro se status, marginal reading ability and somewhat unorthodox treatment modality which I find trigger the ALJ's duty to inquire further.

27.   On remand, the record should be further developed with regard to Plaintiff's seizure disorder before the ALJ can adequately make a determination at step two, or whether that impairment interferes with his ability to work on a sustained basis.  Williams v. Bowen, 844 F.2d 748 (10th Cir. 1988) (citations omitted) (to be placed at a particular level of residual functional capacity, claimant must be able to perform the full range of work in a particular RFC category on a sustained basis).   A neurologic consult should be obtained and if necessary, a vocational expert, should the ALJ proceed past step two in the sequential analysis.

28.   The ALJ gave reasons for discounting Dr. Martinez' note restricting Plaintiff from work on the basis that it was not accompanied by any objective medical findings, and appeared to be based solely on plaintiff's complaints.   An ALJ may give a doctor's opinion less than controlling weight as long as reasons are given.  Kirby v. Sullivan, 923 F.2d 1323, 1328 (8th Cir.1991).   Following development of the record with additional medical findings, the ALJ should revisit Dr. Martinez' note on remand.

**Second Alleged Error**

29. Plaintiff also alleges that the ALJ failed to inquire fully, challenging the ALJ's credibility determination. This determination concerns Plaintiff's back and seizure impairments and their effect on his ability to work.

30. I find that the record supports the ALJ's finding that Plaintiff's complaints of disabling back pain were not credible. Aside from restrictions from heavy lifting (and thus, the ALJ's finding that Plaintiff could no longer perform past work involving heavy labor), the record is inconsistent with Plaintiff's statements that his back pain prevent him from performing any work. The September 1998 RFC assessment indicated a restriction to medium work "was not unreasonable." Tr. at 98. In September 1998, Plaintiff sought emergency attention for back pain, but never returned for follow-up treatment. Tr. at 105. An x-ray done at the time revealed a "mild disc bulge" at the L4-L5 level, but no evidence of disc herniation or other abnormalities. Moreover, Plaintiff worked as a pipefitter after his alleged onset of back pain, Tr. at 14, 84, and was laid off from this job because of down-sizing, not back pain.[5]

31. Thus, the ALJ's credibility determination as to the effect of Plaintiff's back impairment on Plaintiff's ability to work should be upheld. However, because the record needs further development with regard to Plaintiff's seizure impairment, I defer from making findings here, allowing the ALJ to conduct a credibility determination on Mr. Sanchez' epilepsy based on a more complete record.

32. In sum, I find (1) that the ALJ did not properly develop or weigh the evidence with

---

[5] Counsel for Plaintiff notes that Plaintiff stated he was also laid off because of his physical limitations. However, that particular job (heavy labor working at a laundry) followed his job as a pipefitter. Tr. at 125.

regard to Plaintiff's seizure impairment; (2) that the ALJ inquired fully with regard to Plaintiff's back impairment, but (3) that the ALJ's credibility inquiry into the seizure impairment was based on a record which requires further development

## Recommendation

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing **(Doc. 9)** be GRANTED IN PART and that this cause be remanded to the Commissioner for proceedings consistent with these findings, including: development of the record regarding Plaintiff's seizure impairment, obtaining a neurological consult, and if necessary, a vocational expert.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE